Please proceed. May it please the court. Kara Hartzler on behalf of Mr. Mayea. Everyone agrees that Mr. Mayea was a permanent resident, his parents were married, and his father naturalized before Mr. Mayea turned 18. So the only question in this case is a purely legal one. After the Supreme Court's decision in Morales-Santana, is the former derivative citizenship statute at 8 U.S.C. 1432 unconstitutional as applied to Mr. Mayea because it discriminates against married parents? The answer is... The counsel, with respect, I hear your argument, but Morales, you cite footnote 25 in Morales-Santana to argue that any distinction on marital status is subject to heightened scrutiny. But footnote, that particular footnote cited Clark v. Jeter, which discusses legitimacy, not marital status, which is quite different, is it not? It's a little bit different. But if you go back, they basically say that it's very related. And you can't, I don't think the court can get around the fact that in the footnote in Morales-Santana, they specifically said marital status. And you can't turn that into a legitimacy issue just because it relied on a case that... But marital status and legitimacy are related concepts. And if they say marital status, but then quote a legitimacy case, why don't we assume that they're talking about legitimacy? Because if they meant to say legitimacy, they would have said legitimacy. And I think that that's really important. And the other thing I would say, Your Honor, is that if... So legitimacy would have been a higher standard of review for equal protection. But marital status, unless you can tell us otherwise, seems like it would be a rational basis. I think that directly contradicts the footnote itself. But that's what we're talking about. So if we put aside the footnote, do you have any other evidence in all Supreme Court doctrine that marital status gets something other than rational basis? Well, I think we can look at the remedy itself in Morales-Santana. Because what happened there was basically that they said, okay, there is an equal protection problem between unmarried fathers and unmarried mothers. And so we're going to make the residency requirements the same for those. But then they realized that that residency requirement would be different than it would be for married parents. And so they said, well, we can't do that, because that would make little sense. In fact, they said it would be irrational. So basically, they said, we're going to put everyone, fathers, mothers, married, unmarried, on the same level. And because of that, they... And why shouldn't we assume that that's just because they're trying to craft a remedy there? Why do we read that as changing equal protection doctrine? Because, Your Honor, basically what the Supreme Court has said in Seminole Tribe is that if there is language in a Supreme Court decision that would be necessary to the result of that case, then that binds lower courts. And that's exactly what we have now. But I don't think that remedy discussion has to be interpreted as changing equal protection doctrine to make sense of it. I would disagree, Your Honor. And I think I would go back to the whole idea that marital status is the language that the court used. There was a reason...  Right. But Supreme Court footnotes are just as binding as any other part of a Supreme Court decision. So, but I would also go back to the idea, Your Honor, let's say that rational basis did apply. What we know from Morales-Santana, and what the remedy is, and what Justice Ginsburg said, is that there would be no reason, it would be irrational to favor unmarried parents over married parents. But we're bound. So we might not be bound by Bartholomew's reason for why rational basis applies. But if we think rational basis applies, aren't we bound by what Bartholomew said about rational basis being passed? Well, I think... Satisfied? I think no, because Bartholomew basically didn't have the benefit of Morales-Santana's statement that it would be irrational to favor unmarried parents over married parents. And so I think at a minimum, the rationale of Bartholomew is no longer good law after Morales-Santana. But there still is that rationale about being concerned about non-citizen parents and their parental rights. Well, Your Honor, I think for the other reasons given in our brief, those are actually not the case at all. And one of the reasons that I want to point out, and this hasn't been argued in any other case to have considered this issue, is there's an entirely separate set of laws under under the Hague Convention that protects non-citizen parents, and it protects them regardless of the derivative citizenship issue. So for instance, if you had a kidnapping scenario like was put forth in Bartholomew, even if you had that situation, this statute wouldn't relate to it. It wouldn't protect the non-citizen parent. What would protect the non-citizen parent is the Hague Convention. And so it would be irrational to have... citizenship could cause a problem for you. I mean, I don't know all the countries in the world, but it seems possible that aside from kidnapping, there would be a reason that a non-citizen parent wouldn't want their child to become an American citizen. Well, the government has never cited any actual case. And I think that's significant because this marital distinction has been off the books for 20 years. And so there has been supposedly no protection of non-citizen parents for 20 years. And yet there's been no problems. There's been no cases that the government can cite you to where this has been an issue. And in fact, I think it's actually to the contrary, that it is much more likely that parents would want to have their children derive U.S. citizenship. I'm sorry. Can you explain what you mean by it hasn't been in effect or it's been off the books? I'm not sure I understood that argument. Sure. Absolutely. Because in 2000, Congress passed the Child Citizenship Act. And that act removed the exact marital status distinction that we are challenging here. So in other words... So when did it come back or... It hasn't. I see. I see. You're just saying since, but this is because this is an old... He's not grandfather. Because he was not 18 before the Child Citizenship Act was passed. So basically, former 1432 applies to him. And essentially, for the last 20 years, the law has been that you treat married and unmarried parents exactly the same. So we're not really... But that doesn't... I mean, if we're talking about rational basis, the fact that the law changed doesn't invalidate an old law under rational basis. That can't be a legal principle that applies generally. Well, I mean, for the other reasons that we've said, I think that we still would satisfy rational basis. But because there's just simply no case. And as I was saying, Your Honor, I think it is much more likely that the vast majority of parents would rather have their children derive citizenship rather than not. Because it's expensive. It's expensive to have kids naturalized. It's expensive to have parents naturalized. And I just think that overall, if you look at the fact that other laws provide protections that the vast majority of parents would want their children to do this, it really cuts in our favor. And the other thing I would say, Your Honor, is that when Congress changed this law, when they repealed this marital status distinction that we're talking about in 2000, there was zero, zero discussion about protecting non-marital parents. But Counsel, with respect, I get your point about the change after 2000. But the Supreme Court, if I understand correctly, going back to Eisenstadt versus Barrett and thereafter, the Supreme Court's always treated distinctions on marital status based on rational basis, has it not? Well, Your Honor, I think we're in a very specific realm here, where we are looking, both Morales-Santana and here, we're looking at marital status in the context of automatically acquiring or deriving citizenship. I understand that. But what we're dealing with is, I believe anyway, is the question is whether the legislature before 2000 had a rational basis for drafting the law as it did, right? Right. Okay. So that's the case then. I'm not seeing that Bartholomew was eliminated. I'm not seeing that rational basis is eliminated. I get your point about the Hague Convention. There are lots of reasons why they might want to change it. But the reality is we're dealing with the law before it changed. And I'm struggling with the idea that somehow under rational basis that Congress didn't have any basis for acting to draft the former 1432 as it did. I think our best argument, Your Honor, is that Morales-Santana came along and said, it is irrational to favor unmarried parents over married parents. You think that basically it's just, it eclipses Bartholomew. Is that right? We think it overturns it. I think that in this very limited context of acquired or derivative citizenship, this is a narrow place. And what we're saying is that basically Congress and everything that we've seen through the record and through the laws, Congress wanted to err on the side of giving more people derivative citizenship. Do you agree, though, under our precedent that under Miller v. Gammy, we're bound by Bartholomew unless we find that Morales is completely inconsistent with Bartholomew? Right. But I would also point out, Your Honor, that Dent, in Dent, this court did say it relied on Morales-Santana to overrule another aspect of the acquired citizenship law. And they used Miller v. Gammy in that situation. So the court has already said that Morales-Santana satisfies Miller v. Gammy in a certain context. But where do we find that in this case? Where do you find what's specific, Your Honor? Where is the compelling argument under Miller that we have no choice but to overturn the 1432 that we're talking about here? In the plain language of the footnote, 25, in the remedy and in the fact that the government has never given you any actual case. Okay. Thank you, Your Honor. Thank you very much. So let's hear from the government. I'll bet the law students here never thought people really talked about this stuff in the real world. You know, but I enjoy this profession and I encourage them to keep going. May it please the court, good morning, Mark Rahe for the United States. I think the main point that I would like to make today, we're talking about an equal protection challenge. There has to be what I call a hook. You have to have proof, even aside from whether cases have been implicitly overruled, what intermediate scrutiny means, you first have to have proof that there is actual discrimination on the basis of marital status. Now, I understand the first thing that Your Honor has asked my opponent is, well, you're relying on that from the footnote. Maybe that's not even a correct reading. We just presumed, for purposes of our argument, that a distinction based on marital status would require intermediate scrutiny. Yeah, I wasn't sure why you did that. For the following reason, because at least to our view, when you look at 1432, I don't see how there's any distinction based on marital status. The first sentence says, for a foreign born child, as long as both parents naturalized before that child turns 18, if that child's an LPR, it doesn't matter if they're married, if they're divorced, or if they were never married to begin with. It only matters whether they're separated. Yeah, it only matters that they both do it. So I don't see, first of all, that's the default rule. That's not a discrimination. You could have two parents never have any desire to get married at all, but they get both naturalized, then the statute works. Two parents who are married, who have a beautiful marriage that lasts forever, they get naturalized before, you know. But it matters whether they're still together, right? Doesn't it matter whether they're separated? Well, for those three exceptions in the rest of the statute. But even then, I think my opponent has sort of a premise, well, you know, this statute, that those three exceptions discriminate against people who remain married. But it's not just any divorced parent under that third subsection that gets to, you know, attribute this automatic naturalization. It has to be a parent that has sole legal custody. And so again, I mean, I think, you know, if I recall from law school, the whole equal protection, this is apples and oranges. If we're going to take on these serious constitutional issues, I think it's at least incumbent on my opponent to have a clear claim to a distinction that's based on an impermissible ground to begin with. And I don't think you see that. I mean, other than that very last subsection, which talks about a child born out of you know, when you look at the equal protection cases, usually there's some sort of obvious anachronistic, obsolescent view, assumptions that single fathers aren't as good parents as single mothers. You know, in Clark v. Jeter, putting a greater burden on an illegitimate child to sue for paternity support than a legitimate child. When one looks to former 1432A, there are no such obvious and, you know, inequitable assumptions that are evident from the face of the statute. And another point that I wanted to make clear, I hope, is that, you know, when we look at statutes, you can't look at them in a vacuum. You have to look at the whole statutory scheme. Even when the relevant events of this case happen, we've been talking about former 1432. So can I just, if these parents, so his father had naturalized, but not his mother. So if their marital status had been different, wouldn't it have made a difference for him? Like, I'm not quite sure why, like in this, can you explain why this defendant's parents marital status didn't matter? Because it seems like that's the premise of your argument is there's no distinction on marital status. But can you explain that as to the facts of this case and what happened with his parents? Well, I guess because his parents are married. I mean, what is basically the statute is saying is that both. But if they'd been unmarried, that might have made a difference, right? Because like, say, they're unmarried and his father had custody, then he could have had status. I would say no, if they're both unmarried and only one parent naturalized, he still wouldn't get status. They have to have been married first and then have the divorce. And then sole legal custody has to be given. What if they were never married? I mean, a mother who could have custody if the parents are never married, there's no father, they don't even know who it is. The mother can give the citizenship on her own, can't she? Well, if you're talking about the final subsection, yes. As far as the, that was sort of the situation that the Supreme Court approved in the Wynn versus INS case in 2001. But my understanding is that, again, whether they were married, whether they weren't, they both have to be naturalized before the child's 18. So I don't see how that on its face, you know, and here we know that, yeah, they were married, they married in 1981. And the father, there's evidence that he naturalized, the mother didn't. But, you know, it would have had to have been the case that they got divorced and then the father got sole legal custody. And when there's a single parent with sole legal custody, as we argued in our brief, the government's position is that that person, that parent is not substantially, or it's not similarly situated to two parents who still have the same legal responsibilities. But the other point I wanted to make was that even setting all that aside for a second, and the Second Circuit makes this point well in the Pierre case that we rely heavily on, even at the time of the relevant events in this case, there was another subsection, the very next one in the United States Code. And that was section 1433. That provided, that provided actually this defendant's father, if he would have gone by himself to file that petition before the child's 18, and, you know, other cases have said it doesn't impose owner's requirements, that child could have gotten the citizenship. And the, or the Second Circuit in Pierre specifically said that's a reason why children like the one in this case and in that case, they're not falling through the cracks of the system. There was another avenue. And I know in the reply brief, my opponent makes kind of a creative argument where she tries to liken it to Brown versus Board of Education or, you know, where basically somebody under the great equal protection cases of our lifetime where somebody wants to go to a particular school and nobody would suggest that, well, if you can just go to another integrated school, that would be good enough. The point I want to make is that when we're talking about citizenship, it's, if he could have gotten it through 1433, which is available, he'd be a citizen as much as I was who was born in the United States. Citizenship isn't tied to a particular location. And I think that animates the Second Circuit's case in Pierre where they say, basically, how can there be an equal protection problem when even if you want to accept that this is an inequitable situation presented by the facts of this case, there still was another legal avenue where citizenship could have been acquired for the defendant. And whether he went through that route, this route, any other route, he would have been a citizen at the end on the same footing as everybody else. And I would suggest that being the case and the lack of any obvious animus or... It seems much more convoluted to try to read all the exceptions in the statute and the whole way and say marital status never matters. I'm not totally persuaded that that's true. But it seems like you want us to do that complicated thing and then talk about it doesn't matter that there's heightened scrutiny. Why isn't it just much easier to say even if this is marital status, it gets rational basis? I don't understand really why you've taken this strategy. Is there some reason why you want us to not apply rational basis? And, you know, maybe it was that I just didn't look at it that way. You know, sometimes I saw that footnote and I said, well, I know that there's the rule that even dicta from the Supreme Court's entitled to deference hadn't done an equal protection challenge in a long time. I said, you know what, I'll take this on because it seemed to me and, you know, even the cases on rational basis review, you know, there's 10, 15, 20 published cases about where not a single one of them has ever breathed an inference that there was some sort of discrimination based on marital status. I think that's the reason. Do you agree that even if the government said there was a heightened scrutiny that if it's legally wrong, we're not bound by that because it's a matter of law? Yeah, I would have no problem with that, Your Honor. But in the other final thing, I know you had said you would ask my opponent, if you do find that rational basis applies. Based on your reading that footnote, the government's position is very, very much Bartholomew still applies. In order to be, I think Judge Smickey referred to this principle earlier. In order to be ignored by a subsequent Supreme Court case, the two cases have to be clearly reconciled. It's a heightened standard. It's not enough that there's surface tension. Just because there's a footnote in one sentence in Rouse-Santana talking about discrimination based on marital status, again, if it's not clear in this case, that's not enough to implicitly overrule Bartholomew. I gather the government takes the position that Bartholomew survived Morales, that Miller v. Gammie does not permit us to eliminate it. If this Court applies rational basis review, right. And the one thing I would agree with my opponent, though, is in Dent v. Sessions, the Court said, look, after Morales-Santana, it used to be based on the Supreme Court case in 1977, Fiala v. Bell. If anybody says equal protection in the immigration context, we're automatically going to apply rational basis. All that Morales-Santana says is, no, if it's about a citizenship statute, we're not going to automatically do that. But the last, I keep saying the last thing, this time I mean it, Dent v. Sessions, even though they said that, I rewrite it again last night, they end up applying rational basis review to the adoptive parent classifications in that case. They just take away the reason for what the standard would be, and then they have to figure out what the standard would be, which is what we have to do here, I think, too. And it seems that we could say it's rational basis, even if marital status is implicated by this statute. And you would have no objection to that, correct? Okay. Your time is up. Either of my colleagues has additional questions. Thank you very much. Thank you. You used your time up. We'll give you one minute. But you've got to stick to the one minute, okay? I will stick to the one minute. Okay. I will stick to the one minute. Okay. Just two quick points, Your Honor. I think there's a reason that the government didn't argue that rational basis applied here, because the government, and I've worked with Mr. Rahe for a long time, he looked at that footnote and he said, how do I argue against the plain language of a Supreme Court footnote? Particularly because it was then used to get to the result. And so I just think it would be very, very problematic if this Court said, the Supreme Court said marital status is subject to heightened scrutiny, but we think that they didn't really mean it. And the last thing I would say, Your Honor, is in response to your question about if his parents were legally separated or divorced, would that change it? Yes, absolutely that would change it. If he were five years younger, he would be a citizen. And so these are very thin threads upon which to say, no, he is not a citizen. And for those reasons, Your Honor, and because we believe that Morales Santana clearly controls this, we would ask you to vacate his conviction. Very well. Thanks to both counsel. We appreciate your argument. The case just argued is submitted.
judges: M. Smith, Friedland, Bastian